IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In Re: )
)
TIFFANY MILLS, ) Case No. 13-02975-TOM-7
)
Debtor. )

*** NOT FOR PUBLICATION ***

MEMORANDUM OPINION AND ORDER

This bankruptcy case is before the Court following the January 23, 2014 hearing on the Bankruptcy Administrator's Motion to Dismiss or in the Alternative Convert to Chapter 13 with the Debtor's Consent. Appearing before the Court were David Murphree, counsel for the Debtor; Jon Dudeck, counsel for the Bankruptcy Administrator; and the Debtor. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) and the District Court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A).[2] This Court has considered the pleadings, arguments of counsel, the Debtor's testimony and the law, and finds and

---

[1]The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2]28 U.S.C. §157(b)(2)(A) provides as follows:

(b)(2)Core proceedings include, but are not limited to–
(A) matters concerning the administration of the estate[.]

concludes as follows.[3]

## **FINDINGS OF FACT**[4]

Tiffany Mills, the Debtor, filed her Chapter 7 bankruptcy petition on July 2, 2013. Along with the petition and schedules she filed a Chapter 7 Statement of Current Monthly Income and Means-Test Calculation (the "Means Test"). Because Ms. Mills's calculations of her income resulted in her being a below-median-income debtor, the "presumption of abuse" did not arise and she did not complete the portions of the Means Test addressing monthly expenses. On September 6, 2013 the Bankruptcy Administrator filed a Motion to Dismiss or Convert alleging that Ms. Mills's income reported on the Means Test had been understated. On October 3, 2013 the Debtor filed an amended Schedule I and an Affidavit explaining that at the time she filed her bankruptcy case she had been receiving short-term disability that, after deduction of taxes, insurance, and $162.50 per month for the personal use of a company car, resulted in a net pay of $697.99 bi-weekly. Ms. Mills also noted in the Affidavit that after her bankruptcy case she would continue to have ongoing student loan payments in the approximate amount of $650.00 per month. On November 12, 2013 the Debtor filed an amended Means Test on which she increased the amount of her Current Monthly Income[5] and completed the remainder of the form, incorporating the $162.50 per month that had been deducted from her pay for her use of the company car. The Bankruptcy Administrator filed a response to the amended Means Test, raising objections to some of the deductions Ms. Mills had

---

[3] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to contested matters in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Bankruptcy Procedure 9014.

[4] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[5] The Debtor's original Means Test reported her CMI as $3,236.00. Her Amended Means Test reported CMI as $4,720.82.

taken. Specifically, the Bankruptcy Administrator objected to Ms. Mills's claim of "Local Standards: transportation ownership/lease expense" on Line 23 in the amount of $517.00, asserting that the Debtor did not make loan or lease payments on a car at that time. The Bankruptcy Administrator also objected to Ms. Mills's claim of "Other Necessary Expenses: involuntary deductions for employment" in the amount of $162.50 monthly because this expense was already covered in the Line 22A "vehicle operation" expense deduction. In addition the Bankruptcy Administrator objected to Ms. Mills's claim of $523.78 per month for health insurance, asserting that she paid at most $271.00 per month according to her employee income records and schedules. According to the Bankruptcy Administrator, if the amended Means Test had been completed correctly a presumption of abuse of the provisions of Chapter 7 would have arisen. On December 11, 2013, Ms. Mills filed her second amended Means Test, removing the $162.50 per month involuntary deduction for employment and but adding an "additional expense claim" of $425.00 per month in student loan payments. Her health insurance deduction remained the same. Because of the expense deductions Ms. Mills claimed on the amended Means Test the presumption of abuse did not arise. At the hearing on the Bankruptcy Administrator's Motion to Dismiss, Ms. Mills testified that her health insurance costs as reported on the Means Test seemed "high."

## CONCLUSIONS OF LAW

The Bankruptcy Administrator seeks dismissal or conversion[6] of this case on the grounds that

---

[6] Section 707(b)(1) provides in part:

After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

3

granting Chapter 7 relief would be an abuse of the provisions of Chapter 7. According to the legislative history of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Congress was concerned with ensuring that debtors who had the means to pay at least a portion of their debts did so:

> "It is the strong view of the Committee that the bankruptcy code's generous, no-questions-asked policy of providing complete debt forgiveness under chapter 7 without serious consideration of a bankrupt's ability to repay is deeply flawed and encourages a lack of personal responsibility."

*In re Champagne*, 389 B.R. 191, 197 (Bankr. D. Kan. 2008) (*quoting* S. Rep. 106-49, at 3 (1999) (available at 1999 WL 300934)). Thus, Congress included in section 707(b) a provision allowing a bankruptcy court to dismiss or convert a case when granting relief would be an abuse[7] of the provisions of Chapter 7. *See* § 707(b)(1). According to section 707(b)(2)(A)(i):

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of--
> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or
> (II) $12,475.

This formula has been incorporated into Bankruptcy Form 22A, Chapter 7 Statement of Current Monthly Income and Means Test Calculation, more commonly known as the "Means Test," which

---

Thus, upon a finding that granting relief in this case would be an abuse of the provisions of Chapter 7, this Court may convert this case to Chapter 13 only with the Debtors' consent; absent consent this Court may only order dismissal of the case.

[7] Before the 2005 BAPCPA amendments § 707(b) provided that a court may dismiss a case on a finding of "substantial abuse." The BAPCPA amendments removed the word "substantial" so that the statute now provides a case may be dismissed upon a finding of "abuse." Some courts have interpreted this as a broader, more inclusive standard consistent with legislative history. *See In re Henebury*, 361 B.R. 595, 609 (Bankr. S.D. Fla. 2007) ("If anything, BAPCPA's statutory modifications render it easier for a movant to establish abuse."); *In re Bookmyer*, No. 10-35913-BKC-RBR, 2011 WL 6202893, at *2 (Bankr. S.D. Fla. Apr. 14, 2011).

4

must be completed by every individual debtor filing a Chapter 7 bankruptcy case. For purposes of the Means Test a debtor's actual monthly expenses may or may not be relevant. According to section 707(b)(2)(A)(ii)(I), "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . ." The Bankruptcy Administrator has taken issue with two of the expenses claimed by Ms. Mills; namely, the transportation ownership/lease expense in the amount of $517.00 on Line 23, which is determined by the IRS standards, and the health insurance expense in the amount of $523.78 on Line 34a which is determined by a debtor's actual expenses. The Bankruptcy Administrator asserts that but for these allegedly improper deductions the presumption of abuse would arise under the Means Test.

Line 23 of the Means Test covers a deduction for the "transportation ownership/lease expense" of a vehicle, the amount of which deduction is determined by consulting the IRS standards. Courts were divided as to whether a debtor who owned a vehicle outright could deduct this expense on the Means Test until the United States Supreme Court addressed the issue in *Ransom v. FIA Card Services, N.A.*, 131 S. Ct. 716 (2011). In *Ransom*, although the debtor owned his car free and clear of liens, he claimed the transportation ownership/lease expense on the Means Test. *Id*. at 723. The bankruptcy court denied confirmation of the debtor's plan, a decision upheld by the Ninth Circuit Bankruptcy Appellate Panel and the Ninth Circuit Court of Appeals. *Id*. Affirming the Ninth Circuit Court of Appeals decision, the Supreme Court held:

> Based on BAPCPA's text, context, and purpose, we hold that the Local Standard expense amount for transportation "Ownership Costs" is not "applicable" to a debtor who will not incur any such costs during his bankruptcy plan. Because the "Ownership Costs" category covers only loan and lease payments and because Ransom owns his car free from any debt or obligation, he may not claim the

5

allowance. In short, Ransom may not deduct loan or lease expenses when he does not have any.

*Id*. at 730. The Supreme Court noted that "[a] person who owns a car free and clear is entitled to claim the 'Operating Costs' deduction for all these expenses of driving . . . [b]ut such a person is not entitled to claim the 'Ownership Costs' deduction, because that allowance is for the separate costs of a car loan or lease." *Id*. at 725-26.

In *Ransom*, the debtor owned his vehicle outright and thus had no monthly loan or lease expense. In the case before this Court, Ms. Mills did make payments for her personal use of a company vehicle but had no ownership interest in the vehicle. Although the Supreme Court in *Ransom* did not address the exact issue before this Court, namely whether payments for the use of a vehicle owned by someone else could entitle a debtor to claim the ownership/lease expense deduction on the Means Test, the Supreme Court specifically held that the ownership/lease expense deduction "covers only loan and lease payments." Ms. Mills has provided no support for her argument that such payments would entitle her to the deduction. Therefore, this Court concludes that Ms. Mills cannot claim the deduction because she made no loan or lease payments on the vehicle.

Without the transportation ownership/lease expense, Ms. Mills's monthly disposable income increases and the presumption of abuse arises even if Ms. Mills properly claimed the entire amount of the health insurance deduction as reported on the Means Test. Nonetheless, the Court will briefly address the issue. According to all versions of her Means Test, Ms. Mills spends $530.78 per month on health and disability insurance.[8] The Bankruptcy Administrator points out that per Ms. Mills's amended Schedule I, she spent $271.00 per month on insurance, and that the amount is even less

---

[8] It appears that the Bankruptcy Administrator contests only the health insurance premiums of $523.78 per month.

according to her employee income records. Ms. Mills has provided no evidence in support of the amount reported in the Means Test, and in fact, testified that amount of her health insurance premiums reported in the Means Test seemed high. The Court agrees with the Bankruptcy Administrator that the highest insurance expense supported by the record is $271.00. Regardless, even if Ms. Mills could claim the entire $530.78 deduction the presumption of abuse arises without the transportation ownership/lease expense.

Ms. Mills attempts to rebut the presumption of abuse by claiming an additional monthly expense of $425.00 in student loans. There is no evidence that the student loan payments qualify as a "special circumstance" sufficient to rebut the presumption of abuse. *See In re Edwards*, No. 12-00603 TOM-7, 2012 WL 3042233 (Bankr. N.D. Ala. July 25, 2012).

Because a presumption of abuse arises and has not been rebutted, Ms. Mills's Chapter 7 case is due to be dismissed or converted to a Chapter 13. Therefore, it is **ORDERED, ADJUDGED, and DECREED** that the Bankruptcy Administrator's Motion to Dismiss is **GRANTED** unless the Debtor files a notice of conversion to Chapter 13 within fourteen days of the entry of this Memorandum Opinion and Order.

Dated: February 24, 2014

/s/ Tamara O. Mitchell
TAMARA O. MITCHELL
United States Bankruptcy Judge

TOM/dgm

xc: David Murphree, counsel for Debtor
Jon Dudeck, counsel for the Bankruptcy Administrator
Thomas E. Reynolds, Chapter 7 Trustee

7